NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALADIN A. DOMINO,<br><br>             Plaintiff,<br>v.<br><br>COUNTY OF ESSEX, JOHN GONCALVES, individually and in his capacity as Undersheriff of Essex County, and ARMANDO B. FONTOURA, individually and in his capacity as Sheriff of Essex County,<br><br>             Defendants. | Civil Action No.: 2:20-cv-02237 (CCC-MF)<br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court on Defendants County of Essex ("Essex County"), Undersheriff John Goncalves (the "Undersheriff"), and Sheriff Armando B. Fontoura's (the "Sheriff") (collectively, "Defendants") Motion to Dismiss (ECF No. 7 ("Mot. to Dismiss")) Plaintiff Saladin A. Domino's ("Plaintiff") Complaint (ECF No. 1 ("Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). After reviewing the submissions made in support of and in opposition to the instant motion (ECF Nos. 9 ("Opp'n"), 12 ("Reply")), and for the reasons set forth below, Defendants' motion is **GRANTED**.

**I.      BACKGROUND**

The following facts are accepted as true for purposes of the instant Motion. Plaintiff is an African American Muslim male, who was employed, for all times relevant herein, as an Officer in the Essex County Sheriff's Department, assigned to the Bureau of Criminal Identification ("BCI"). Compl. at ¶ 1. This action arises out of a series of orders disseminated by the Sheriff that modified the grooming standards for Officers of Essex County. On March 23, 2015, the Sheriff authored

General Order 2015-12, which notified all Officers of Essex County that the grooming standards for facial hair would be revised and that, in the meantime, all Officers were required to be clean shaven. Compl. at ¶ 9. Plaintiff contends that General Order 2015-12 required Plaintiff to violate the tenets of the Islamic faith, so he filed an action with the Equal Employment Opportunity Commission ("EEOC") in April 2015; but the EEOC's investigation was permanently stalled after the assigned investigator was transferred out of the EEOC. Id. at ¶ 10.

Defendants allege that, on August 4, 2015, Essex County's Assistant County Counsel informed the EEOC "that Special Order Memo #2015-12, which imposed a strict prohibition on facial hair, was rescinded on June 12, 2015, by way of Special Order Memo #2015-27, which did in fact permit exceptions for medical and religious reasons." Mot. to Dismiss at 14 (citing ECF No. 7-3 at 24–26). Defendants further allege that, in response, on February 19, 2016, the EEOC served Essex County with an 'Acknowledgment of Settlement,' which stated that the EEOC will take no further action on behalf of Plaintiff and that it will discontinue its investigation of Plaintiff's charge. Id. at 14–15; ECF No. 7-3 at 28.

On January 1, 2016, the Sheriff authored General Order 2016-01, "which required Officers requesting a religious exemption to submit documentation explaining the religious practice requiring the accommodation, as well as a notarized certification confirming the Officer's participation in a specific religion and the Officer's adherence to the ten[ets] of that religion." Id. at ¶ 11. On January 2, 2019, the Sheriff added a requirement that Officers seeking a religious exemption must resubmit all documentation annually. Id. at ¶ 11 (citing General Order 2019-01).

On January 28, 2019, Plaintiff submitted two separate internal reports to the Essex County Sheriff's Office (internal reports hereinafter referred to as "151s") requesting a religious accommodation. Compl. at ¶ 13. He also submitted a request to the Office of Human Resources for the County of Essex the following day. Id. at ¶ 14. On January 31, 2019, Plaintiff submitted

2

another 151 and annexed a notarized Certification confirming that he is a practicing Muslim and is required by his religion to maintain a beard. Id. at ¶ 15.  A few days later, the Superior Officer of the Essex County Sheriff's Office advised Plaintiff that his documentation was insufficient and that he must obtain a notarized Certification from his Imam, confirming Plaintiff's regular attendance at a specific mosque and his adherence to the tenets of the Islamic faith. Id. at ¶ 16.

On February 11, 2019, at Plaintiff's request, the American Civil Liberties Union (the "ACLU") submitted correspondence to the Sheriff, carbon copying Essex County Counsel Courtney Gaccione, advising them that General Order 2016-01 (as affirmed by General Order 2019-01) was being interpreted as requiring clergy to execute certifications on behalf of their worshippers, in violation of the Establishment Clause of the United Sates Constitution and the Constitution of the State of New Jersey.  Id. at ¶ 17.  The ACLU expressed that it would be willing to engage in an amicable dialogue to reach resolution. Id.  Defendants did not engage in such a dialogue. Id. at ¶ 18.

A few weeks after receipt of the ACLU's letter, the Sheriff ordered the Internal Affairs Unit of the Essex County Sheriff's Office to conduct a "beard inspection" at the BCI unit where Plaintiff was working. Id. at ¶¶ 18–19.  During the inspection, a Sergeant from Internal Affairs "announc[ed] to all present that he was there to measure the beard of any Officer receiving an exemption from the Sheriff's Grooming standard." Id. at ¶ 19.  Plaintiff asserts that the "Sergeant, while carrying a ruler and clipboard, walked up to Plaintiff [], leaned in very close to his face and stated loud enough for all in the room to hear that Plaintiff['s] [] beard was within regulation limit for the religious exemption, so it need not be measured." Id. at ¶ 19.  Plaintiff was distressed by the inspection; he worked in another area (away from his colleagues/supervisors) for the rest of the day and took the next day off. Id. at ¶¶ 20–21.  Plaintiff's distress was so apparent that a welfare check was conducted on Plaintiff to ensure his well-being during his day off. Id. at ¶ 22.

On October 11, 2019, Plaintiff was initially advised by a Superior Officer of Essex County that he would be assigned to the Courts Division that day, rather than his regular assignment in BCI. Id. at ¶ 25.  However, Plaintiff was later advised that the Undersheriff issued an order that barred Plaintiff from the Courts Division because his "beard was longer than one quarter of an inch in length, and therefore, Plaintiff was noncompliant with the Sheriff's Office grooming standard." Id. at ¶ 26.  That same day, Plaintiff "observed two Caucasian males with beards longer than his own working in the Courts Division." Id. at ¶ 27.  Sometime thereafter: (1) Plaintiff began working under a Sergeant named Chraszcz; and (2) Plaintiff was assigned again to the Courts Division for a day and reported there as instructed. Id. at ¶¶ 31–32.[1]  As of March 1, 2020 (the time of the filing of the Complaint), Plaintiff is still employed by the County of Essex as an Officer in the BCI unit. Id. at ¶ 1.

## II.   LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions . . . will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

---

[1] Plaintiff contends that, as a result of Defendants' actions, he has suffered, and continues to suffer, loss of career advancement, loss of reputation, public humiliation, emotional distress and monetary damages. Id. at ¶ 35.

*Iqbal*, 556 U.S. at 678 (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis:  "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).[2]

### III.  DISCUSSION

On March 1, 2020, Plaintiff filed the instant Complaint asserting seven claims against Defendants:  (1) violation of Title VII of the United States Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.* for a hostile work environment; (2) violation of Title VII, 42 U.S.C. § 2000e-2(a)(2) for illegal limitation, segregation, and/or classification based on race and/or religion; (3) violation of the Fourteenth Amendment of the United States Constitution; (4) violation of Title VII, 42 U.S.C. § 2000e-2(m) for impermissible consideration of race, color and/or religion in employment practices; (5) violation of 42 U.S.C. § 1983; (6) violation of the New Jersey Law Against Discrimination (the "NJLAD") N.J.S.A. 10:5-1, *et seq.*; and (7) violation of the New Jersey Civil Rights Act (the "NJCRA"), N.J. Rev. Stat. § 10:6-2(c).

On May 16, 2020, Defendants filed the instant Motion to dismiss pursuant to Rule 12(b)(6), arguing that:  (a) Plaintiff's Title VII claims (Counts 1, 2, 4) should be dismissed because Plaintiff failed to exhaust his administrative remedies; (b) Plaintiff's § 1983 claim, which is based on an

---

[2] When assessing a motion to dismiss under Rule 12(b)(6), this Court is limited to considering the allegations in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents on which a plaintiff's claims are based. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

alleged violation of the Equal Protection Clause of the United States Constitution (Counts 3, 5), should be dismissed because Plaintiff has failed to allege disparate treatment or discriminatory intent; (c) Plaintiff's NJLAD claim (Count 6) should be dismissed because Plaintiff failed to allege an 'adverse employment action' taken against him; and (d) Plaintiff's NJCRA claim (Count 7) should be dismissed for substantively the same reasons as his § 1983 claim. Mot. to Dismiss at 4–16. The Court agrees, and addresses the arguments for and against dismissal, below.

### a) Title VII of the Civil Rights Act (Counts 1, 2, 4)

In Counts 1, 2, and 4, Plaintiff alleges violations of Title VII for hostile work environment, illegal limitation, and impermissible consideration of protected status, respectively. Prior to initiating a Title VII action, a plaintiff must exhaust his administrative remedies, typically by filing a charge with the EEOC and receiving a right-to-sue letter from the EEOC. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469–70 (3d Cir. 2001); *see* 42 U.S.C. § 2000(e)–5(e)(1) (setting forth procedural requirements for a Title VII action). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). A plaintiff's "[f]ailure to exhaust administrative remedies, while not a jurisdictional defect, is a ground to dismiss a case for failure to state a claim." *Devine v. St. Luke's Hosp.*, 406 F. App'x 654, 656 (3d Cir. 2011) (citing *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 87–88 (3d Cir. 1999)).

Although Plaintiff alleges that he filed a charge with the EEOC in 2015 (Compl. at ¶ 10), Plaintiff does not attach a right-to-sue letter to the Complaint and there are no factual allegations from which to reasonably infer that he obtained a right-to-sue notice. *See* id. at 1–15. Moreover, Plaintiff does not appear to dispute Defendants' argument that he failed to allege an exhaustion of administrative remedies. *See* Opp'n at 10–11. Thus, Plaintiff's Title VII claims (Counts 1, 2, and 4) are dismissed for failure to exhaust administrative remedies. *See Devine*, 406 F. App'x at 656;

*Stampone v. Freeman Decorating Co.*, 196 F. App'x 123, 125 (3d Cir. 2006) ("In the absence of a right-to-sue letter, a Title VII suit can be dismissed for failure to state a claim upon which relief may be granted.").[3]

### b) Violation of the Equal Protection Clause and 42 U.S.C. § 1983 (Counts 3, 5)

In Count 3 of the Complaint, Plaintiff pleads a cause of action under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.  In Count 5, Plaintiff pleads an essentially duplicative cause of action consisting of an Equal Protection claim under 42 U.S.C. § 1983.  Plaintiff concedes that § 1983 does not confer any substantive rights, but rather provides a cause of action for violations of constitutional rights. Opp'n at 10; *see Woodyard v. Cty. of Essex*, 514 Fed. Appx. 177, 180 (3d Cir. 2013) (claims of constitutional violations against state actors must be brought pursuant to § 1983).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that he suffered a violation of the Equal Protection Clause of the Fourteenth Amendment, and that the deprivation was committed by the Sheriff and the Undersheriff while they were acting under the color of law. Compl. at ¶¶ 48–50, 55–57.  An Equal Protection claim may be brought pursuant to two theories of liability:  a "class-of-one" theory and/or a "selective

---

[3] If Plaintiff elects to amend Counts 1, 2, and 4, he is directed to explain whether, and why, the instant Action falls within the scope of the prior EEOC investigation. *See Antol v. Perry,* 82 F.3d 1291, 1295 (3d Cir. 1996) (to establish an exhaustion of administrative remedies, a plaintiff must not simply file a charge with the EEOC, he must also allege facts in the subsequent Title VII suit that are "fairly within the scope of the prior E.E.O.C. complaint, or the investigation arising therefrom."); *Valdes v. New Jersey,* No. 05-3510, 2005 WL 3447618, at *4 (D.N.J. Dec. 15, 2005) (dismissing a hostile work environment claim for failure to exhaust administrative remedies upon finding that the claim was outside the scope of a reasonable EEOC investigation).

enforcement" theory of liability. *Simmermon v. Gabbianelli*, 932 F. Supp. 2d 626, 631 (D.N.J. 2013). The Court finds that Plaintiff has failed to plead an Equal Protection claim under § 1983 because as a public employee, Plaintiff is foreclosed from asserting a claim under the class-of-one theory of liability, *see Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 606–09 (2008); and Plaintiff has not alleged sufficient facts to support a claim pursuant to the alternative selective enforcement theory.

To establish that his Equal Protection rights were violated by selective enforcement of a law or policy, Plaintiff must demonstrate: "(1) that he was treated differently from other similarly situated individuals; and (2) that this selective treatment was based on an unjustifiable standard, such as race, religion, some other arbitrary factor or to prevent the exercise of a fundamental right." *Karns v. Shanahan*, 879 F.3d 504, 520–21 (3d Cir. 2018); *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013). Thus, to maintain a claim of this type, Plaintiff must show that the administration of laws has not only "resulted in unequal application to those who are entitled to be treated alike, but also that there is an element of intentional or purposeful discrimination." *PG Pub. Co.*, 705 F.3d at 115 (internal citations and quotations omitted); *see Jewish Home of E. Pa. v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 35, 363 (3d Cir. 2012) ("[T]o maintain an equal protection claim of this sort, [plaintiff] must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect.").

With regard to the first element, at the motion to dismiss stage, Plaintiff "must allege sufficient facts to make plausible the existence of [] similarly situated parties" that received disparate treatment, by including "specific factual allegations as to the allegedly similarly situated parties." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011); *see Yagla v. Simon*, No.

14-181, 2015 WL 1326341, at *15 (W.D. Pa. Mar. 24, 2015).[4] Plaintiff makes only one allegation of disparate treatment: on October 11, 2019, the Undersheriff rescinded Plaintiff's temporary assignment to the Courts Division by reason of his beard's length exceeding applicable regulations, yet "[e]arlier on that very same day, Plaintiff personally observed two Caucasian males with beards longer than his own working in the Courts Division." Compl. at ¶¶ 25–26.[5] The Complaint lacks specific allegations as to these "two Caucasian males"; it is not even clear whether they were police officers or other employees working in the Courts Division.

As to the second element, Plaintiff has failed to allege that the Undersheriff rescinded Plaintiff's temporary assignment with a discriminatory purpose or with the intent to deprive Plaintiff of his constitutional rights. *See PG Pub. Co.*, 705 F.3d at 115; *Jewish Home*, 693 F.3d at 363. Therefore, Plaintiff fails to state a selective enforcement claim, and Counts 3 and 5 are dismissed. *See Perano*, 423 F. App'x at 238; *Stein v. City of Philadelphia*, No. 13-4644, 2014 WL 1395040, at *2–3 (E.D. Pa. Apr. 8, 2014) (plaintiff club owner brought selective enforcement claim alleging that policeman conducted unnecessary inspections/interrogations at plaintiff's club and was motivated by racial animus; court dismissed claim under Rule 12(b)(6) because: (1) plaintiff "failed to allege specific instances where entities similarly situated to [plaintiff's club] were treated differently"; and (2) plaintiff "fail[ed] to cite any facts from which a reasonable juror could conclude that [the policeman] acted with an improper motive").

---

[4] Persons are "similarly situated" for equal protection purposes when "they are alike in all relevant aspects." *Suber v. Wright*, 574 F. App'x 207, 211 (3d Cir. 2014) (internal citations and quotations omitted).

[5] There is no indication that the other allegedly discriminatory actions taken by Defendants—including the issuance of grooming orders and the February 2019 'beard inspection'—resulted in disparate treatment to similarly situated Officers.

9

Furthermore, as Defendants correctly note, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Here, Plaintiff has not alleged that the Undersheriff acted pursuant to a municipal policy, practice, or procedure, nor does he allege that the Undersheriff had final policymaking authority. *See* Compl. at 3–15. Indeed, Plaintiff does not even address the viability of his *Monell* claim in his opposition to the motion to dismiss. *See* Opp'n at 1–17. Thus, as an additional ground for dismissal of Count 5 against Essex County, the Court finds that Plaintiff's pleading fails to satisfy the *Monell* doctrine.[6]

### c) New Jersey Law Against Discrimination (Count 6)

In Count 6, Plaintiff claims that Defendants violated the NJLAD, which makes it unlawful "[f]or an employer, to discriminate against [an individual in a protected category] in compensation or in terms, conditions or privileges of employment." N.J.S.A. 10:5-12; *see* Compl. at ¶ 58–61. To state a *prima facie* case of discrimination under the NJLAD, Plaintiff must plead that: "(1) he belongs to a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination." *Campbell v. Supreme Court of N.J.*, No. 11-555, 2014 WL 7343225, at *5 (D.N.J. Dec. 23, 2014) (citing *Davis v. City of Newark,* 285 F. App'x 899, 903 (3d Cir. 2008). Here, while the Complaint satisfies the first and second factors, it does not sufficiently allege that, "as a result of [Plaintiff's] protected status, he suffered an adverse employment action 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of

---

[6] If Plaintiff elects to re-assert his section 1983 claim against Essex County, he is directed to assert the *Monell* claim as a separate Count and explain his arguments against dismissal of said *Monell* claim.

10

employment.'" *Harley v. Paulson*, No. 07-3559, 2008 WL 5189931, at *3 (D.N.J. Dec. 9, 2008) (citing *Storey*, 390 F.3d at 764).

Although there is no bright-line rule as to what constitutes an adverse employment action, New Jersey state and federal courts have held that actions causing direct economic harm (such as hiring, firing, failing to promote, or adjusting wages or benefits) qualify as adverse actions sufficient to support a *prima facie* case of employment discrimination. *See Campbell*, 2014 WL 7343225, at *6 (D.N.J. Dec. 23, 2014) (citing *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 152–53 (3d Cir. 1999)); *Richter v. Oakland Bd. of Educ.*, 459 N.J. Super. 400, 418 (App. Div. 2019). "So too, noneconomic actions that cause a *significant, non-temporary adverse change* in employment status or the terms and conditions of employment would suffice." *Richter*, 459 N.J. Super. at 418; *see Durham*, 166 F.3d at 152–53 (explaining that an adverse employment action may be found, where there is no direct economic harm, "[i]f an employer's act *substantially decreases an employee's earning potential* and causes *significant disruption in his or her working conditions*") (emphasis added). Setting aside the conclusory allegations in the Complaint, Plaintiff has not alleged any actions taken by Defendants that caused him direct economic harm, nor has he alleged noneconomic actions that "cause[d] a *significant*, *non-temporary* change" to Plaintiff's employment status or working conditions, or substantially decreased his earning potential.[7] *See Richter*, 459 N.J. Super. at 418 (emphasis added); *Durham*, 166 F.3d at 152–53; *see, e.g.*, *Kelly v. Horizon Med. Corp.*, No. 11-1501, 2012 WL 32925, at *6 (M.D. Pa. Jan. 6, 2012) (plaintiff's

---

[7] Plaintiff alleges the following non-economic actions taken by Defendants: (1) a directive to file an additional certification when seeking a religious exception to the grooming Order; (2) a February 2019 'beard inspection' in front of Plaintiff's colleagues; (3) an incident on October 11, 2019 wherein Plaintiff was informed that his *temporary* assignment to the Courts Division for that day would not proceed; and (4) a change in Plaintiff's chain of command, sometime after February 2019, with no apparent change in responsibilities, duties, or work conditions. Compl. at 4–7.

11

allegations of "being made an hourly employee, having her shift changed, having duties taken away from her, and losing vacation time" sufficed to constitute adverse employment actions).

Thus, Plaintiff's NJLAD claim is dismissed for failure to sufficiently allege an adverse employment action. *See Richter*, 459 N.J. Super. at 418 (dismissing plaintiff's NJLAD claim because "her situation does not rise to the level of an adverse employment action as our courts have contemplated to date under the [NJ]LAD."); *Schott v. State*, No. A-2612-04T1, 2006 WL 1911375, at *8 (N.J. Super. Ct. App. Div. July 13, 2006) (affirming dismissal of plaintiff's NJLAD claim "for its failure to allege an adverse employment action, as required under the [NJ]LAD").

### d)  Violation of the New Jersey Civil Rights Act (Count 7)

Under Count 7, Plaintiff alleges a violation of the NJCRA, for a deprivation of Plaintiff's "equal protection rights, privileges, and/or immunities secured by the Constitution of the United States and/or the laws of the United States and/or the Constitution of the State of New Jersey and/or the laws of the State of New Jersey, and/or Plaintiff['s] [] exercise and/or enjoyment of his substantive rights, privileges and/or immunities." Compl. at ¶¶ 62–63 (quoting N.J.S.A. § 10:6-2(c)).  The NJCRA provides a cause of action for violations of civil rights secured under federal and state law; it was modeled after, and is analogous to, § 1983. *Pettit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011).  Courts often analyze the sufficiency of an NJCRA claim through the same lens as a § 1983 claim. *See id.* ("This district has repeatedly interpreted NJCRA analogously to § 1983."); *Chapman v. New Jersey,* No. 08-4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart").

Plaintiff argues that violations of "the United States Civil Rights Act (as plead in Counts I, II and IV of the Complaint), the United States Constitution (as plead in Count III of the Complaint) and NJLAD (as plead in Count VI of the Complaint)," give rise to his NJCRA claim. Opp. at 18.

12

Plaintiff also argues that the success of his NJCRA claim depends upon the Court's ruling on his other claims. Id. at 17 ("Count VII survives *as long as any* of the other counts in Plaintiff['s] [] Complaint survive.") (emphasis added). Because Plaintiff has failed to allege a violation of Title VII, NJLAD, or the Equal Protection clause of the United States Constitution, Count 7 is dismissed. *See supra* Sections III(a)–(c).

**IV.   Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 7) the Complaint (ECF No. 1) is granted. All Counts are dismissed without prejudice. Plaintiff may file an amended complaint that cures the pleading deficiencies discussed herein within thirty (30) days of the date of this Opinion.

An appropriate Order follows this Opinion.

**Date:** February 11, 2021

**HON. CLAIRE C. CECCHI, U.S.D.J.**